## Ex parte RODRIGUEZ et al.

(District Court, S. D. Texas, at Laredo.)

1. **Aliens ⊜⟫54(9)—Evidence held not to show that alleged aliens were likely to become public charges, because of possibility of conviction for adultery.**

Evidence *held* not to support charge that alleged aliens were likely to become public charges, because of possibility of conviction for adultery, in view of fact that they had supported themselves in this country while living in such relation for 15 years without molestation or trouble.

2. **Aliens ⊜⟫46—Return of alien from foreign country constitutes new entry, with right of exclusion on same conditions as original entry.**

Return of alien to United States from foreign country constitutes a new entry, with right of exclusion on same conditions and as fully as if it were an original entry.

3. **Aliens ⊜⟫54(10)—Finding that alien had been convicted, or admits commission, of felony, held too indefinite to support warrant of deportation.**

Finding, on which warrant of deportation was based, that alien had been convicted, or admitted commission, of a felony, *held* too indefinite to support warrant, as being in the alternative.

4. **Aliens ⊜⟫54(10)—Warrant of deportation should be supported by definite and clear finding.**

Warrant of deportation should be supported by definite and clear finding, which, in law, would support the act.

5. **Aliens ⊜⟫54(9)—Evidence held to support warrant of deportation on ground of importing person for immoral purpose.**

Warrant of deportation, on ground of importing or attempting to import person for immoral purpose, *held* supported by evidence.

6. **Aliens ⊜⟫54(16)—Court has power to examine only technical and legal sufficiency of warrant of deportation.**

Court has power to examine only technical and legal sufficiency of warrant of deportation, and findings of Secretary are final, if in accordance with law.

Habeas Corpus. Petition by Julian Rodriguez and Juana Martinez for release from custody under warrant of deportation. Writs denied.

M. J. Raymond, of Laredo, Tex., for petitioners.

D. Heywood Hardy, Asst. Dist. Atty., of Houston, Tex., for the department.

HUTCHESON, District Judge. The warrant as to Julian Rodriguez is based upon the following findings: That he was a person likely to become a public charge at the time of his entry into the United States; that he has been convicted of, or admits having committed, a felony or other crime, or misdemeanor involving moral turpitude, prior to entry into the United States, to wit, adultery; and that he imported, or attempted to import, a person for an immoral purpose.

As to Juana Martinez: That she entered by means of false and misleading statements, thereby entering without inspection; that she was a person likely to become a public charge at the time of her entry; that she has been convicted of, or admits having committed, a felony or other crime involving moral turpitude, prior to entry into the United States, to wit, adultery; and that she entered the United States for an immoral purpose.

The facts are that both of the persons had been living in the United States for many years; that for more than 15 years they had been living together as man and wife, both of them having been previously married, but' their respective spouses having abandoned them in each case more than 3 years before they entered into their new relations.

Only the river separates the United States from Mexico, and persons pass constantly to and from the two republics by means of the bridge and the ferries. Juana Martinez, in February of this year, crossed the bridge to Nuevo Laredo in the morning, intending to come back the same night, and, on returning, was stopped by the inspector; that, upon Julian Rodriguez advising the immigration inspector at the bridge that Juana was his wife, she was permitted to come over; that Julian Rodriguez, in pursuance of his practice of making trips across the river into Mexico, had been in Mexico two or three days before the hearing, going and coming back the same day. The evidence in the case shows that the petitioners have a business ample to support them, and that they have never wanted for the necessary means of support.

[1] On the first charge, that they are likely to become public charges, the government relies wholly upon the proposition that they are living in adultery and may become convicted for it. Under the facts of this case, no such conclusion is either probable or possible, and a finding on the face of this record of their living and supporting themselves in the United States for 25 years, and in the same relation for 15 years, without molestation or trouble, that they are likely to become' public charges, is not only without evidence to support it, but does violence to reason and common sense. Unless defendants can be deported on some of the other grounds named, they must be discharged.

[2] The department's real reliance is upon the fact that these people have lived together

without having been married, and, having spouses living, are incapable of being married to each other. The petitioners assert that the trip across the bridge does not constitute a new entry, but that their entry must be determined as of the time when they originally came into the United States for the purpose of settling here, and that therefore the provisions of the statute invoked have no application, since the offense with which they are charged was committed not prior to entry into the United States, but thereafter.

The department replies that, every time an alien leaves the United States for a foreign country, no matter how temporary or brief the stay, his return to the United States constitutes a new entry, with the right to exclude the alien at that time, upon the same conditions and as fully as if it were an original entry; in short, that the statute does not speak of an original or a secondary entry, but of an entry, and that it applies in full vigor whenever an alien, having left the United States, seeks to return to it.

Both the letter of the law and a practically uniform line of authorities seem to sustain the government in this contention, though I think that the process of reasoning which produced the result in favor of the petitioner in Petition of Hersvik (D. C.) 1 F.(2d) 449, a seaman departing from this country on a voyage, seems more reasonable.

[3] It remains only to inquire whether, at the time of the petitioners' most recent entry, they were subject to deportation because of the remaining findings on which the warrant of deportation is based. These are, as to Rodriguez, (1) that he has been convicted of, or admits the commission of, a felony, to wit, adultery; (2) that he imported or attempted to import a person for an immoral purpose. That adultery constitutes a crime involving moral turpitude must be admitted, but that the finding of the Secretary on this point is too indefinite to support the warrant I think clear, because the finding is in the alternative, and therefore meaningless, since it does not find either that he has been convicted of, or that he admits, but finds that he did one or the other, which is in effect no finding.

[4] A warrant of deportation is the exercise of executive authority, involving grave and momentous consequences, and to support the warrant there should be a definite and clear finding which in law would support the act. Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549. In order to support a deportation for having committed an offense, the evidence must clearly show, and the finding must find, either a legal conviction, or a clear and unequivocal admission of guilt. Johnson v. Koch Shing (C. C. A.) 3 F.(2d) 889. And anything short of this will not suffice.

[5] It does not follow, however, that Rodriguez is entitled to his release; the statute denounces the importation of any person for an immoral purpose, and the evidence establishes that he did import the woman for the purpose of continuing to live with her, as he had theretofore done, in a state of concubinage or adultery. This is an inescapable result from the law of the state, which fixes, not only the conditions under which persons of opposite sexes can live together, but the morality which inheres in the act, and though there is strong ground for finding that Rodriguez, having lived with the woman 15 years, acted from a metaphysical standpoint not immorally, but morally, in supporting and maintaining her under the circumstances of this case, from the technical and legal standpoint upon which the commissioner acted, there is ample support for his finding and warrant.

[6] It is only the technical and legal sufficiency of the warrant which the court has power to examine. The findings of the Secretary are final, if they are in accordance with the law. I cannot refrain from saying, however, that such a literal, drastic, and harsh application of the law as this case furnishes was not, in my opinion, intended by the framers of it, since under the undisputed facts these persons have been in every respect as man and wife, and would be under the laws of Texas united in a common-law marriage, but for the legal impediment of their prior marriages. Certainly it is a far-fetched conclusion to arrive at that these persons, who have been in the United States for 25 years, and living in the same state in which they are now found for 15, have suddenly become, without any change of status whatever, inimical to the welfare of this country, and persons who ought to be removed from it.

These matters, however, are confided by Congress, not to the courts, but to the department, and finding, as I do, that the evidence and the law support the third finding as to Rodriguez, his application for habeas corpus must be denied.

As to Juana Martinez, the same conditions which have served to dispose of the case against Rodriguez on the three charges which are common to both will serve to dispose of them as to her, and for the same reason the writ of habeas corpus must be denied.